Joseph C. CANTERBURY, Plaintiff,

v.

FEDERAL–MOGUL IGNITION
CO., Defendant.

No. 4:05 CV 00560.

United States District Court,
S.D. Iowa,
Central Division.

March 3, 2006.

Gordon R Fischer, Bradshaw Fowler Proctor & Fairgrove, Des Moines, for Plaintiff Joseph C. Canterbury, Plaintiff.

Martha L Shaff, Betty Neuman & McMahon, LLP, Davenport, Robert W Stewart, Lowenbaum Partnership LLC, Clayton, MO, for Federal–Mogul Ignition, Defendant.

## ORDER ON MOTIONS

ROBERT W. PRATT, District Judge.

Before the Court are three motions filed by Defendant, Federal–Mogul Ignition Co. ("Federal–Mogul"): Motion to Dismiss (Clerk's No. 6); Motion to Strike (Clerk's No. 7); and Motion to Transfer Case out of Central Division to Davenport Division (Clerk's No. 20). The matters are fully submitted and the Court will address each motion in turn.

## I. FACTUAL BACKGROUND

Joseph Canterbury ("Canterbury") filed the present action on September 12, 2005 in the Iowa District Court in and for Des Moines County, Iowa. Defendant removed the matter on October 11, 2005, alleging both diversity jurisdiction and federal question jurisdiction. Plaintiff is a citizen of Iowa. Defendant is a citizen of both Delaware and Michigan. The amount in controversy, from the face of the pleadings, appears to exceed the jurisdictional requisite of $75,000, exclusive of costs and interest. Accordingly, jurisdiction is proper pursuant to 28 U.S.C. § 1332. Jurisdiction is also proper pursuant to 28 U.S.C. § 1331, as Plaintiff asserts violations of two federal statutes, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq. Supplemental jurisdiction over plaintiff's Iowa Wage Payment Collection Act claim, Iowa Wrongful Discharge claim, and Iowa Civil Rights claim, is proper pursuant to 28 U.S.C. § 1367.

The facts as alleged in Plaintiff's Complaint are as follows. Plaintiff commenced employment with Federal–Mogul on October 11, 1999 as a metal working supply clerk. During the course of his employment, Plaintiff performed his job to the best of his abilities, never receiving any oral or written disciplinary warning during his entire employ. Eventually, Plaintiff received a promotion to the position of Pincell Suros Operator. Plaintiff is a Type II diabetic. On February 14, 2005, he was diagnosed with pneumonia and bronchitis and was absent from work from February 15–21, 2005, due to his illness and the side effects that illness imposed on his diabetes. Plaintiff notified his employer of his absences in accordance with Federal Mogul's absence policy, but was terminated from his employment on February 22, 2005.

Plaintiff filed a complaint with the Iowa Civil Rights Commission in May, 2005, stating:

> I was discharged from my job for being sick. I was under doctor's care at the time. I called in to work every day. I last worked on February 9, 2005. I called and took a personal day on February 10, 2005. I was with a family member at the hospital due to a medical emergency. I had scheduled vacation on 2/11/05 and 2/14/05. I normally worked Monday through Friday, and some Saturdays. I was scheduled to return to work on 2/15/05. I got sick on 2/14/05. I called in on 2/15, 2/16, 2/17, 2/18, 2/19, and 2/21. These call-ins are all done by voicemail. I call, leave my name, clock number, supervisor's name,

date and shift I work, and reason for my absence.

Ron Vorick called me on 2/22. The doctor originally thought I had pneumonia. It turned out I had bronchitis. I was placed on medicine. The medicine I was on raised my blood sugar, so I had to be placed on a separate medicine. I was in contact with my doctor during the period I was absent from work. I am rarely sick, and did not intend to remain ill so long.

No one from Federal–Mogul contacted me during the time I was absent to advise me I had to apply for a leave of absence as I had missed seven calendar days. I was never at the point at any time in the past where my job was in jeopardy. I was absent the last time due to illness.

Clerk's No. 6–3 at 4.

## II. LAW AND ANALYSIS

### A. *Motion to Dismiss*

1. *Counts 1 and 2.*

Count I of Plaintiff's Complaint alleges that Defendant violated the ADA when it terminated his employment. Specifically, Count I asserts that Plaintiff's diabetes constitutes a disability and that he was fired and refused reasonable accommodation because of his actual or perceived disability. Count II of Plaintiff's Complaint alleges the same facts as constituting a violation of the Iowa Civil Rights Act ("ICRA"). Federal case law supplies the basic framework for deciding cases under the ICRA. *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1380 (8th Cir.1996) (citing *Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'n,* 322 N.W.2d 293, 296 (1982)). Iowa courts "traditionally turn to federal law for guidance on evaluating the ICRA, but federal law . . . is not controlling." *Vivian v. Madison,* 601 N.W.2d 872, 873 (Iowa 1999) (citations omitted). Accordingly, the Court will address Defen-

dant's Motion to Dismiss Plaintiff's state and federal law claims together.

Defendant's Motion to Dismiss urges that the Court lacks jurisdiction over Plaintiff's Count I and II claims, which are not like or related to Plaintiff's administrative Charge/Complaint. Specifically, Defendant claims that the Court lacks jurisdiction over the allegations concerning diabetes and over the allegations concerning failure to accommodate. Thus, according to Defendant, those claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) (motion for dismissal for "lack of jurisdiction over the subject matter" of a claim).

■ In order to pursue a claim of discrimination under the ADA, a plaintiff must exhaust his administrative remedies. 42 U.S.C. § 12117(a) (incorporating the enforcement provisions of Title VII); 42 U.S.C. § 2000e–5(b)(c) and (e). Exhaustion requires that a timely charge of discrimination be filed with the Equal Employment Opportunity Commission ("EEOC"), or with regard to a state claim, with the Iowa Civil Rights Commission ("ICRC"), which includes all challenged adverse employment decisions. A Complaint filed subsequent to the issuance of a Right to Sue letter from the EEOC or the ICRC will be limited to those causes of action contained in the administrative charge, with the exception that a plaintiff may pursue unexhausted claims that are like or reasonably related to the allegations contained in the timely administrative charge. *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994). The reason for limiting actions to those properly exhausted before the administrative body was well-stated by one district court:

Civil complaints filed under Title VII may only encompass "discrimination like or related to allegations contained in the

[EEOC] charge and growing out of such allegation during the pendency of the case before the Commission." The primary purpose of the EEOC charge is to provide notice to the respondent and to activate the voluntary compliance and conciliation functions of the EEOC. The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory practices and policies eliminated. Accordingly, the scope of the complaint is limited to the scope of the EEOC investigation. Thus, the failure to assert a claim of discrimination in the EEOC charge or for it to be developed in the course of a reasonable EEOC investigation of that charge prohibits the claim from later being brought in a civil suit.

*Clemmer v. Enron Corp.*, 882 F.Supp. 606, 610 (S.D.Tex.1995) (internal citations omitted).

■ Defendant claims that Plaintiff's administrative charge is devoid of any mention of diabetes, and Plaintiff therefore cannot maintain suit on the basis of discrimination because of that disability. The question, then, is whether Plaintiff's claim that he was discriminated against due to his diabetic condition is sufficiently "like or related to" his allegations in the underlying administrative complaint that: "The doctor originally thought I had pneumonia. It turned out I had bronchitis. I was placed on medicine. The medicine I was on raised my blood sugar, so I had to be placed on a separate medicine."

Defendant cites *Moore v. City of Overland Park*, 950 F.Supp. 1081 (D.Kan.1996) and *Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178 (8th Cir.1998) in support of its position that the Eighth Circuit Court of Appeals has taken a very narrow view of when the trait alleged in the judicial complaint is "like or related to" the trait alleged in the administrative

charge. In *Moore*, the plaintiff attempted to state causes of action for discrimination based on her nicotine addition, diabetes, and a central nervous disorder. *Moore*, 950 F.Supp. at 1086. The court found the plaintiff could not maintain the discrimination claims based on nicotine addiction and the central nervous disorder because her administrative complaint did not mention those alleged disabilities, and because the plaintiff offered "no basis from which the court could conclude that her disability discrimination claim based on her diabetes is like or reasonably related to her disability discrimination claims based on her alleged nicotine addition or central nervous disorder." *Id.* In *Artis*, a teacher complained about the treatment that a school's principal gave a black student as opposed to a white student. *Artis*, 161 F.3d at 1183. In his administrative complaint, the plaintiff very specifically alleged that he was fired in retaliation for making those complaints. *Id.* While the plaintiff also objected to some personal harassment he received, he did not mention in the administrative complaint that he believed he was retaliated against for complaining about his own disparate treatment. *Id.* Due in large part to the specificity of the plaintiff's statement before the administrative body, the Court of Appeals found that the claim of retaliation for complaining about his own treatment was not like or related to plaintiff's claim for retaliation for complaining about the treatment of students, as the two incidents occurred on separate occasions and were not otherwise tied together. *Id.*

The Court finds the cases cited by Defendant to be inapposite. There is no dispute that Plaintiff did not specifically mention diabetes in his underlying administrative complaint. He did, however, make a specific reference to medication for pneumonia and bronchitis raising his blood sugar level. While certainly not

synonymous, blood sugar and a diabetic condition are widely known to coexist. In determining whether his present complaint is sufficiently like or related to the allegations in the administrative charge, the Court must liberally construe the underlying charges "in order not to frustrate the remedial purposes of Title VII." *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988); *see EEOC v. Western Pub. Co., Inc.*, 502 F.2d 599, 602–03 (8th Cir.1974) (finding charges are to be construed broadly in order to effectuate the remedial and humanitarian underpinnings of Tile VII). The remedial purpose of Title VII is to prevent unlawful employment practices. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 631 (8th Cir.2000). While Plaintiff's wording in his administrative charge is somewhat vague, vagueness alone will not preclude a plaintiff from raising a claim. *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir.1996) (finding mere vagueness in pro se claim should not sound death knell for plaintiff's Title VII discrimination allegation, and noting the difference between liberally reading a claim which lacks specificity and inventing a claim that was not made). The Court concludes, therefore, that Plaintiff's diabetes discrimination claim may proceed because it is sufficiently like or related to his reference to "blood sugar" in his administrative claim, such that he reasonably could have expected that the scope of the investigation into the matter would have included investigation into his diabetic condition. *See Stuart*, 217 F.3d at 630–31 ("Therefore, the breadth of a civil suit is only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.").

Defendant argues that the Court should disregard the rule requiring that administrative charges be construed with the "utmost liberality" because Plaintiff was represented by counsel in the processing of his administrative charge. Defendant cites *Ang v. Procter & Gamble Co.*, in support of its conclusion that "[l]iberal construction is not necessary where the claimant is aided by counsel in preparing his charge." *Ang v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir.1991). The Sixth Circuit appears to be the only circuit that has adopted such a narrow view, and the rule there has been rejected where the record lacked evidence that retained counsel had "actually" assisted the plaintiff in preparing the administrative charge. *See Alazawi v. Swift Transp. Co.*, 391 F.Supp.2d 626, 631 n. 11 (W.D.Tenn.2004). Here, it is clear that Plaintiff himself actually wrote the facts presented to the EEOC and the ICRC, despite having been instructed to do so by counsel, and despite any subsequent letters by counsel to the commissions. Regardless, the well-settled law in the Eighth Circuit is that administrative charges are to be broadly construed and the Court declines to depart from that precedent.

■ With regard to Plaintiff's claim of failure to accommodate, Defendant again asserts that Plaintiff's failure to accommodate claim is not sufficiently like or related to the language in his underlying Complaint/Charge, such that he should be allowed to proceed. The Plaintiff contends that his use of the phrase, "I was discharged from my job for being sick" was meant to allege that he was terminated because of his disability. He also points to the fact that he called in sick to work six times and his supervisor never returned his calls, and never advised him that his extended absence would require him to apply for a leave of absence. According to Plaintiff, a simple investigation into these facts would have revealed a failure to accommodate or grant a leave of absence on the part of Federal Mogul.

It is generally accepted that a failure to accommodate is not like or reasonably related to an allegation of termination. *Stuart*, 217 F.3d at 630 (stating an allegation of discipline is not like or related to an allegation of termination); *see Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997) (finding a complaint of failure to accommodate and termination are separate things not like or reasonably related); *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853–54 (6th Cir.2000) (holding a termination claim is far different from a failure to accommodate claim). Here, construing the complaint's allegation of "discharge" to mean a failure to accommodate would be overstepping the bounds of the like or related to standard and fabricating a claim that is not there. An allegation of "discharge," while likely to trigger an investigation into a termination, is not reasonably likely to trigger an investigation into failure to accommodate absent additional information. *See Weigel*, 122 F.3d at 464 (holding that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA" and pointing out that a failure to accommodate claim and a claim of discriminatory treatment under the ADA are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability).

The determinative issue here is whether a failure to accommodate is sufficiently like or related to Defendant's assertions in his administrative complaint that he repeatedly telephoned work to report his absences, but was never called back or informed that he would have to apply for a leave of absence. In liberally construing the administrative charge, the Court finds that it is. Plaintiff's telephone calls reporting his absences could reasonably be seen as requests for accommodation of his alleged disabilities, to which Defendant failed to respond. Despite Plaintiff's failure to specifically state a claim for failure to accommodate in his administrative charge, the Court finds the claim is reasonably related to his assertions that he was terminated despite phoning into work every day for six days.

### 2. *Count IV.*

■ Plaintiff's Complaint in Count IV alleges that Federal Mogul fired Plaintiff because he was absent due to a serious illness. Specifically, Plaintiff claims that it is a violation of the public policy of Iowa to fire "an employee because of medical reasons, and specifically for recovering from a life-threatening illness ...." Compl. ¶ 30. Defendant urges that the claim must be dismissed pursuant to federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Specifically, Defendant claims that Count IV is preempted by the ADA, the ICRA, and the FMLA. Defendant also claims that Plaintiff has failed to adequately plead the requisite elements of a public policy tort.

In addressing a motion to dismiss under Rule 12(b)(6), this Court "is constrained by a stringent standard .... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir.1997) (quoting *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982) (citation omitted) (emphasis added)).

In addition, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See Parnes*, 122 F.3d at 546. Finally, when considering a motion to dismiss for failure to state

a claim, a court must accept the facts alleged in the complaint as true. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The Supreme Court has articulated the test as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A motion to dismiss should be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir.1995).

In *Smidt v. Porter*, 695 N.W.2d 9, 17 (Iowa 2005), the Iowa Supreme Court examined whether a plaintiff who filed a discrimination claim under the ICRA could add a wrongful discharge claim to her lawsuit. The court explained that the ICRA is preemptive where a plaintiff's tort claim mirrors her ICRA claim: "To the extent the ICRA provides a remedy for a particular discriminatory practice, its procedure is exclusive and the claimant asserting that practice must pursue the remedy it affords." *Id.* Preemption applies unless the claims are " 'separate and independent, and therefore incidental, causes of action.' " *Id.* (quoting *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 858 (Iowa 2001)). The key inquiry is whether the operative facts giving rise to Plaintiff's ICRA claim are based upon the same conduct giving rise to the wrongful discharge claim. *Id.* (citing *Channon*, 629 N.W.2d at 857).

Here, Plaintiff's wrongful discharge claim incorporates by reference the preceding allegations in his Complaint, including those allegations relating to his ICRA claims. Pl.'s Compl. ¶ 28. The crux of Plaintiff's wrongful discharge claim, as asserted in the Complaint, "is based on Federal Mogul's ignoring of the Plaintiff's repeated telephone calls and their impatience in dealing with the Plaintiff's slower than average recovery. The claim is not based on his discharge for being sick." Clerk's No. 10–2 at 6. Plaintiff argues that the wrongful discharge claim is distinct from his ICRA claim because the wrongful discharge claim does not require proof of discrimination. This distinction is untenable in light of the fact that Plaintiff's ICRA claim asserts that Plaintiff was refused leave and reasonable accommodations for his illnesses, essentially the same conduct Plaintiff objects to in his claim for wrongful discharge. The Court cannot fathom any reasonable means whereby Plaintiff could prove wrongful discharge in violation of public policy without attempting to prove that he was discriminated against on the basis of his illness, thus preempting the claim under the ICRA. Likewise, to the extent that Plaintiff claims he should have been permitted time off to recuperate from his illness, the ADA failure to accommodate claim and the FMLA claim are also preemptive, as the right to have time off to recuperate from an illness is well-encompassed within the protections afforded

by those statutes, and Plaintiff has raised claims for relief under both.

### B. *Motion to Strike*

Defendant next seeks to strike, pursuant to Federal Rule of Civil Procedure 12(f), Plaintiff's Count II request for punitive damages under the ICRA; Plaintiff's Count III request for compensatory damages for emotional pain and suffering under the FMLA; and Plaintiff's Count V request for liquidated damages under the Iowa Wage Payment Collection Act. Plaintiff has not filed any resistance to Defendant's Motion to Strike and the Motion may, accordingly, be granted on that basis alone. *See* Local Rule 7.1(e) ("Each party resisting a motion must, within 14 days after the motion is served, serve and file a brief containing a statement of the grounds for resisting the motion and citations to the authorities upon which the resisting party relies . . . ."); Local Rule 7.1(f) ("If no timely resistance to a motion is filed, the motion may be granted without prior notice from the court.").

 Moreover, Defendant's Motion to Strike succeeds on the merits. Punitive damages under the ICRA are prohibited in employment cases. *See City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 537 (Iowa 1996) ("Our civil rights statute does not allow for punitive damages."); *Chauffeurs, Teamsters & Helpers Local Union No. 238 v. Iowa Civil Rights Comm'n*, 394 N.W.2d 375, 382–84 (Iowa 1986) (punitive damages not available under the ICRA). Likewise, the Eighth Circuit Court of Appeals has squarely held that emotional distress damages are not recoverable under the FMLA. *See Rodgers v. City of Des Moines*, 435 F.3d 904, 909 (8th Cir.2006) ("We thus conclude emotional distress damages are not available under the FMLA."). Finally, the Iowa Wage Payment Collection Act ("IWPCA"), Iowa Code Chapter 91A does not permit an award of liquidated damages for the denial

of accrued vacation benefits. *See Cantaberry v. Tyson Foods, Inc.*, 2001 WL 1772351 (N.D.Iowa Aug. 8, 2001) (finding that vacation benefits are not "wages" within the meaning of the IWPCA, such that liquidated damages are recoverable) (citing *Dallenbach v. Mapco Gas Prods., Inc.*, 459 N.W.2d 483, 489 (Iowa 1990) (annual bonus not wages for purposes of recovering liquidated damages)).

### C. *Motion to Transfer Venue*

At the time of removal, Defendant designated that the above-captioned matter be removed from the Iowa District Court in and for Des Moines County, Iowa, to the United States District Court for the Southern District of Iowa, Davenport Division. The parties have, since the inception of the case, captioned their documents as a Davenport Division case. It appears that due to a clerical error, the case code used by the Clerk of Court designated this matter as arising in the Central Division of Iowa. The parties do not appear to dispute, however, that venue properly lies in the Davenport Division, rather than the Central Division. Nonetheless, Plaintiff resists Defendant's Motion to Transfer Venue to the Davenport Division on the basis that United Magistrate Judge Thomas Shields has been heavily involved in the present matter and should continue to be, and on the basis that Plaintiff will incur less expense in the Central Division because that is where Plaintiff's counsel is situated.

In light of the fact that venue in the Central Division only occurred due to a clerical error, Plaintiff's arguments are less than compelling. The Court agrees that Judge Shields is an excellent and fair judge who should continue to be involved in the case. Judge Shields, however, is actually stationed in the Davenport Division and thus will not be the least bit hampered in continuing his involvement

with this case. Moreover, shifting costs from the Plaintiff to the Defendant is not a valid basis for retaining the case in an improper Division. Accordingly, the Clerk of Court is directed to assign the present case to the Davenport Division.

### III. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (Clerk's No. 6) is GRANTED with respect to Plaintiff's Wrongful Discharge claim, but DENIED with respect to Plaintiff's ADA claims founded on diabetes and failure to accommodate. Defendant's Motion to Strike (Clerk's No. 7) is GRANTED in its entirety. Defendant's Motion to Transfer Case out of Central Division to Davenport Division (Clerk's No. 20) is GRANTED.

IT IS SO ORDERED