**Floyd BOLTON, Plaintiff–Appellant,**

v.

**SCRIVNER, INC., Defendant–Appellee.**

**No. 93–6402.**

United States Court of Appeals,
Tenth Circuit.

Sept. 21, 1994.

---

Rick W. Bisher of Boettcher and Ryan, Oklahoma City, OK, for plaintiff-appellant.

James C. Chandler, Peter T. Van Dyke, and Sam Reynolds Fulkerson of Lytle Soule & Curlee, Oklahoma City, OK, for defendant-appellee.

Before TACHA and EBEL, Circuit Judges, and ROGERS,[*] District Judge.

TACHA, Circuit Judge.

Plaintiff Floyd Bolton appeals from the district court's grant of summary judgment to defendant, Scrivner, Inc. Bolton alleged that he was illegally discharged because of his disability and age, in violation of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.[1]

The district court's order sets forth the underlying facts. *See Bolton v. Scrivner, Inc.*, 836 F.Supp. 783, 785–86 (W.D.Okla. 1993). Briefly restating the facts relevant to this appeal, Scrivner had employed Bolton as an order selector in its grocery warehouse for more than two years when Bolton suffered a work-related injury in October 1991.

Bolton was given a medical leave of absence. According to Scrivner's policy, an employee on medical leave cannot return to work until the company doctor certifies that the employee is fit to resume work. Accordingly, when Bolton sought to return to work, Scrivner required him to be examined by a Scrivner-hired physician, Dr. Fine. Dr. Fine concluded that Bolton was unable to perform the job of order selector. When Scrivner refused to rehire Bolton as an order selector, Bolton filed suit, alleging that Scrivner had discriminated against him on the basis of his disability and age.[2]

The district court granted Scrivner's motion for summary judgment. The court held that the evidence did not show Bolton to be an "individual with a disability" under the ADA. Relying on. *Welsh v. City of Tulsa*, 977 F.2d 1415 (10th Cir.1992), a Rehabilitation Act case under 29 U.S.C. § 794, the court ruled that evidence that Bolton's disability prevented him from performing his job was insufficient to show that Bolton was substantially limited in the major life activity of working. On the age claim, the court held that Bolton did not produce evidence sufficient to demonstrate that Scrivner's stated reason for preventing Bolton's return—his disability—was merely a pretext for age discrimination. The court held that allegedly discriminatory comments made by Bolton's supervisor did not show pretext because Bolton had not shown that the supervisor was involved in the employment decision at issue. Nor was pretext shown by the fact that Scrivner benefited financially when it replaced older or injured workers, the court concluded.

We review the district court's summary judgment ruling de novo, viewing the record in the light most favorable to the party opposing summary judgment. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 527–28 (10th Cir.1994). Summary judgment is appropriate "if the pleadings, depositions,

---

* Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Bolton also alleged a number of state law causes of action.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We may affirm summary judgment "on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." *Cone*, 14 F.3d at 528.

## ADA Claim

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). At issue in this case is whether Bolton is an "individual with a disability." "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(2). Although Bolton alleged in his complaint that Scrivner discriminated against him on the basis of a "perceived" impairment, and argued in opposition to summary judgment that he has a "record" of impairment, he limits his argument on appeal to whether he has a disability as that term is defined in subparagraph A of § 12102(2).

The ADA does not define the term "major life activities." We are guided by the definition found in regulations the Equal Employment Opportunity Commission (EEOC) has issued to implement Title 1 of the ADA, 29 C.F.R. Pt. 1630. *See* 42 U.S.C. § 12116 (requiring the EEOC to issue regulations to implement Title 1 of ADA); *cf. School Bd. of Nassau County v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987) (treating Rehabilitation Act regulations promulgated by the Department of Health and Human Services as " 'an important source of guidance on the meaning of § 504 [of the Rehabilitation Act]' ") (quoting *Alexander v. Choate*, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712,

722 n. 24, 83 L.Ed.2d 661 (1985)). The ADA regulations adopt the definition of "major life activities" found in the Rehabilitation Act regulations, 34 C.F.R. § 104. *See* 29 C.F.R. Pt. 1630, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.2(i) Major Life Activities. The term "means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Bolton argues that he is substantially limited in the major life activity of working. To demonstrate that an impairment "substantially limits" the major life activity of working, an individual must show "significant[ ] restrict[ion] in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." *Id.* § 1630.2(j)(3)(i) (emphasis added). The regulations specify that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

This court adopted a similar rule in *Welsh v. City of Tulsa*, 977 F.2d 1415 (10th Cir. 1992). In *Welsh*, we stated that "[w]hile the [Rehabilitation Act] regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice." *Id.* at 1417. We held that "an impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the [Rehabilitation] Act." *Id.* at 1419.

Bolton argues on appeal that the principle announced in *Welsh* should not apply because he brought his claim under the ADA, not the Rehabilitation Act. Alternatively, he argues that he produced evidence which could support the inference that he is significantly restricted in the activity of working, as defined in *Welsh* and the ADA regulations.

■ Bolton's first argument is easily rejected. "The ADA defines a disability in substantially the same terms as the [Rehabilitation] Act defines an individual with handicaps (now an individual with a disability)." *Chandler v. City of Dallas*, 2 F.3d 1385, 1391

(5th Cir.1993) (footnote omitted), *cert. denied*, —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). The legislative history of the ADA indicates that "Congress intended that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term 'disability' as used in the ADA." 29 C.F.R. Pt. 1630, Appendix to Part 1630—Interpretive Guidance to Title I of the ADA, § 1630.2(g) (citing S.Rep. No. 116, 101st Cong., 1st Sess. 21 (1989); H.R.Rep. No. 485 Part 2, 101st Cong., 2d Sess. 50 (1990); H.R.Rep. No. 485 Part 3, 101st Cong., 2d Sess. 27 (1990)), U.S.Code Cong. & Admin.News 1990, p. 267. Further, as we just explained, the *Welsh* principle is consistent with the relevant ADA regulation, 29 C.F.R. § 1630.2(j)(3)(i). The district court correctly ruled that Bolton's inability to return to his particular job without some accommodation does not demonstrate a substantial limitation in the major life activity of working. *See Welsh*, 977 F.2d at 1417–19; 29 C.F.R. § 1630.2(j)(3)(i).

Bolton's second argument is more troublesome. We review the record for evidence of six factors set forth in the ADA regulations. The first three factors "should be considered" when determining whether an impairment substantially limits a major life activity, 29 C.F.R. § 1630.2(j)(2), and the additional three factors "may be considered" when determining whether an impairment substantially limits the major life activity of working, *id.* § 1630.2(j)(3)(ii).

The three factors that "should be considered" when determining whether an impairment substantially limits a major life activity are: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).

The three additional factors that "may be considered" when an individual claims substantial limitation in the major life activity of working are:

(A) [t]he geographical area to which the individual has reasonable access;

(B) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii); *see also Welsh*, 977 F.2d at 1419 (recognizing relevance of factors such as " '(1) the number and type of jobs from which the impaired individual is disqualified, (2) the geographical area to which the individual has reasonable access, and (3) the individual's job expectations and training.' ") (quoting *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 (6th Cir. 1985) (numbers added)). The district court entered summary judgment against Bolton because he failed to produce "evidence relevant to any of the factors, listed in *Welsh*, that should be used in evaluating whether an impairment substantially limits his employment potential." *Bolton*, 836 F.Supp. at 788.

Bolton claims that the district court overlooked four pieces of evidence which show that his impairment significantly restricts his ability to perform a class of jobs. Dr. Fine, who advised Scrivner in July 1992 that Bolton's pain, numbness, and limited ability to lift weight rendered him unfit to return to work, Appellant's App., Vol. II, at 386–87, stated in a deposition, "[B]y any stretch of the imagination, [Bolton] was not ready to return to any kind of employment as he presented himself to me," *id.* at 366. Another doctor, Dr. Ellis, concluded in May 1992, that Bolton "cannot return to any work where he has to stand up on a concrete floor all day. [Bolton] will need vocational rehabilitation retraining into a position where he does not have to stand for prolonged periods." *Id.* at 396. The record also contains a notice from the Oklahoma Employment Op-

portunity Commission, awarding unemployment benefits based on medical evidence that Bolton could "perform work duties in keeping with [his] work experience, education and training with limitations with standing, walking and lifting overhead." *Id.* at 255. Finally, the record contains an opinion from the Oklahoma Workers' Compensation Court, finding that Bolton was temporarily totally disabled from October 23, 1991, to March 20, 1992, and he sustained a nine percent permanent partial disability to his right foot and a twenty-nine percent permanent partial disability to his left foot. *Id.*, Vol. I, at 197–98.

This evidence, however, does little to show that Bolton is restricted from performing a class of jobs. The evidence does not address Bolton's vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which Bolton would also be disqualified. Instead, the evidence goes to the nature and severity, duration, and impact of Bolton's impairment—the factors listed in 29 C.F.R. § 1630.2(j)(2).[3] Because Bolton failed to produce evidence showing a significant restriction in his "ability to perform either a class of jobs or a broad range of jobs in various classes," *id.* § 1630.2(j)(3)(i), we affirm the award of summary judgment to Scrivner on Bolton's ADA claim.[4]

### ADEA Claim

■ ADEA claims are analyzed under the three-step framework outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *Cone,* 14 F.3d at 529. We presume, as the district court presumed,

that Bolton made out a prima facie case of age discrimination. Scrivner, in turn, produced evidence that its refusal to rehire Bolton was motivated by concerns over Bolton's physical limitations. Scrivner, thus, satisfied its burden of articulating a "facially nondiscriminatory" reason for its employment decision—a reason "that is not on its face, prohibited by" the ADEA. *Cf. E.E.O.C. v. Flasher Co.,* 986 F.2d 1312, 1316 n. 4 (10th Cir.1992). At that point, the burden shifted to Bolton to present probative evidence which could support the inference that Scrivner's reason was merely a pretext for discrimination. *See Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir. June 20, 1994). "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

■ We agree with the district court that Bolton failed to raise a genuine issue of fact regarding pretext. The comments by Bolton's supervisor that Bolton was an "old fart" do not show pretext because Bolton failed to demonstrate a nexus between those comments and Scrivner's decision not to rehire him. *See Cone,* 14 F.3d at 531 (requiring nexus between comments and challenged employment decision). Further, that Scrivner may have saved money by replacing Bolton with a casual worker does not show pretext. *E.E.O.C. v. Sperry Corp.,* 852 F.2d 503, 511 (10th Cir.1988). "Absent some evidence that

---

**3.** We note that this evidence is undermined by other evidence showing that Bolton's impairments were of limited duration and had no permanent or long term impact. The record shows that Bolton suffered work-related injuries to both feet and his right shoulder in September and October 1991. Appellant's App., Vol. II, at 395. Bolton's job required him to stand on his feet much of the day, *id.,* Vol. I, at 42, with some lifting, *id.,* Vol. II, at 386. Bolton stated in his deposition that by May or June of 1992, he was capable of returning to his position at Scrivner. *See id.,* Vol. I, at 61, 80. He testified that at the time of his deposition, he was no longer afflicted with any disabilities. *Id.* at 80. Applying for unemployment benefits in August 1992, Bolton submitted a signed statement that he was capa-

ble of performing any job that did not require lifting 50–70 pounds overhead. *Id.* at 188. On a separate statement, certified by Bolton to be true, correct, and complete, Bolton represented that he was capable of performing his usual type of work. *Id.* at 190.

For purposes of our review, we assume that Bolton's evidence demonstrates a relatively severe impairment, of long term duration, producing a permanent or long term impact.

**4.** We express no opinion on whether Bolton qualifies as disabled under the ADA based on a perceived impairment or a record of impairment, as those issues are not raised on appeal.

such concerns mattered to Scrivner when it decided to institute its injured workers policy or when it decided to prevent Bolton from returning, a reasonable jury could not infer that cost savings alone indicate[s] an intent to discriminate on the basis of age." *Bolton,* 836 F.Supp. at 793 n. 11 (citing *Sperry Corp.,* 852 F.2d at 511–12).

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.