**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

Kurt Siemon,

      Plaintiff-Appellant,

v.

AT&T Corporation, et. al.,

      Defendants-Appellees.

No. 96-1159

---

ORDER
Filed June 30, 1997

---

Before **ANDERSON**, **LUCERO** and **MURPHY**, Circuit Judges.

---

This case comes before the panel pursuant to appellant's petition for rehearing, filed June 10, 1997. The petition is granted for the sole purpose of deleting footnote 1 of the panel's opinion, filed May 20, 1997. The petition is denied in all other respects. A copy of the revised opinion is attached to this order.

                                         Entered for the Court,

                                         PATRICK FISHER
                                         Clerk of Court

F I L E D
United States Court of Appeals
Tenth Circuit

JUN 30 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

KURT SIEMON,

     Plaintiff - Appellant,

v.

AT&T CORPORATION, formerly
known as American Telephone and
Telegraph Company, a New York
corporation; AT&T GLOBAL
BUSINESS COMMUNICATIONS
SYSTEMS, a division of AT&T
Corporation; AT&T SICKNESS AND
ACCIDENT DISABILITY BENEFIT
PLAN,

     Defendants - Appellees.

No. 96-1159

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-WY-573 CB)**

---

Richard J. Lesch, Denver, Colorado for the Appellant.

Donna K. McNamara (Lee Dale with her on the brief), Sherman & Howard,
L.L.C., Denver, Colorado for the Appellees.

---

Before **ANDERSON**, **LUCERO** and **MURPHY**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Plaintiff Kurt Siemon sued his employer, AT&T, and the AT&T Sickness and Accident Disability Benefit Plan, (collectively "AT&T") for violating provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The district court granted AT&T summary judgment on all three of Siemon's claims and this appeal followed. We affirm.

I

Siemon began working for AT&T in 1975. In early 1991, he worked in its Denver office as an Accounts Receivable Specialist. At that time, he was placed under a new supervisor, Lee Ann Fortune. The relationship between the two was never good, deteriorating over two years until Siemon took disability leave because of the severe depression and anxiety he suffered from working under Fortune. While on disability leave Siemon consulted with three psychiatrists. Though their views varied, each suggested he not return to work under Fortune's supervision.

AT&T offered Siemon a transfer to a different supervisor, but he declined the offer, or any other within the supervisory chain of Fortune's supervisor, Phil Warner. Siemon asserted that his disability prevented him from working within the Warner chain of command because Fortune had "poisoned the waters." The department headed by Warner then included approximately 150 employees. While

on disability, Siemon was unable to find another position within AT&T, and AT&T did not offer him one outside of Warner's department.

When Siemon was placed on disability leave, he became eligible to receive benefits under AT&T's Sickness and Accident Disability Benefit Plan ("SADB Plan"). This ERISA welfare benefit plan entitles employees to receive disability benefits commensurate with their length of tenure at AT&T. The amount and duration of benefits depends on the cause of an employee's disability: "sickness disability benefits" are available for up to fifty two weeks if an employee is totally disabled due to a "nonjob-related illness or injury"; "accident disability benefits" are available for as long as an employee is disabled as a result of a "work-related on-the-job accident."

Siemon obtained his disability benefits under the sickness disability portion of the SADB Plan, receiving payments equal to his regular salary for 26 weeks and, thereafter, benefits equal to half his regular salary for another 26 weeks. In October, 1993, when his disability benefit dropped to half his regular salary, Siemon inquired about other benefits to which he might be eligible. His benefits counselor indicated that Siemon should consider applying for "Other Benefit" payments, described in an AT&T board resolution. "Other Benefit" payments, which are not mentioned in any AT&T-sponsored ERISA plan document, may be requested by employees who demonstrate "severe financial need and hardship."

See Appellant's App. at 43. Requests for Other Benefit payments are made to the AT&T Benefit Claim and Appeal Committee ("the Committee") by filling out a four page statement and submitting corroborating documentation. The Committee has authority, at its discretion, to authorize payments or loans of no more than $1,000.

Siemon applied for and was denied Other Benefit payments. He asked the Committee to reconsider its decision. It did so and again denied his application, explaining that Siemon had not demonstrated that he had pursued other alternatives and that, specifically, he had not made sufficient efforts to reduce his expenses.

Siemon then filed a charge with the Equal Employment Opportunity Commission, alleging that AT&T violated the ADA by failing to reasonably accommodate his disability. The EEOC issued a Right to Sue letter and Siemon filed this suit. Siemon's complaint alleged that he was a "qualified individual with a disability," and that AT&T's failure to provide a reasonable accommodation violated the ADA. Siemon also brought two claims under ERISA. First, he alleged that the decision to classify him under the "sickness disability benefit" provision of the SADB Plan rather than under the "accident disability benefit" provision violated ERISA. Second, he asserted that the method through which AT&T provided Other Benefit payments constituted an ERISA

plan, and that AT&T had failed to comply with ERISA's notice and disclosure requirements.

In response, AT&T filed a motion for summary judgment, which the district court granted in its entirety. With respect to Siemon's ADA claim, the court found as a matter of law that Siemon was not a "qualified individual with a disability" because his inability to work in a department of 150 employees "does not constitute an inability to perform a class of jobs or a broad range of jobs in various classes," as must be shown to qualify for a disability under the ADA. Appellant's Supp. App. at 138. As to Siemon's ERISA claims, the district court first found that AT&T's classification decision under the SADB Plan was proper because his disability did not result from an on-the-job accident. The district court also concluded that Other Benefit payments were not subject to ERISA regulation because the arrangement did not constitute a "plan, fund or program" as required under ERISA. Specifically, the court held that the "Other Benefit" payment scheme was not a "plan" because it did not "implicate an ongoing administrative scheme." The court based its decision on Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987), in which the Supreme Court held that an ERISA plan requires "an ongoing administrative program to meet the employer's obligation." Id. at 11.

## II

In his appeal, Siemon presses the same arguments raised before the district court, asserting that summary judgment was improperly granted. We review the grant of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56(c). James v. Sears, Roebuck & Co., 21 F.3d 989, 997-98 (10th Cir. 1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard, we construe the factual record and all reasonable inferences from the record in the light most favorable to the party opposing summary judgment. Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir. 1994).

## A

Under the ADA, it is illegal for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A "qualified individual with a disability" means a person with (1) a "disability" who (2) can perform the essential functions of the employment position, with or without "reasonable accommodation." 42 U.S.C. § 12111(8). Hence, Siemon must demonstrate (1) that he is "disabled" within the meaning of the ADA; (2) that he is qualified—with or without reasonable accommodation; and (3) that he was discriminated against because of his

disability.  See White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995).

In this case we focus on the term "disability" because if Siemon suffers no

"disability" AT&T's behavior is not actionable under the ADA.

For the purposes of Siemon's claim, the term "disability" means "a physical

or mental impairment that substantially limits one or more of the major life

activities of [the] individual."  42 U.S.C. § 12102(2)(A).  Working is a "major life

activity."  Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir. 1994), cert.

denied, 115 S. Ct. 1104 (1995).  In order to demonstrate that an impairment

"substantially limits" the major life activity of working, Siemon must show a

"significant restriction in the ability to perform either a class of jobs or a broad

range of jobs in various classes as compared to the average person having

comparable training, skills and abilities."  Id. (quoting 29 C.F.R. 1630.2 (j)(3)(i)).

A "class of jobs" includes "jobs utilizing similar training, knowledge, skills or

abilities, within that geographical area," while a "broad range of jobs in various

classes" includes "jobs not utilizing similar training, knowledge, skills or

abilities, within that geographical area, from which the individual is also

disqualified because of the impairment."  29 C.F.R. §§ 1630.2(j)(3)(ii)(B),(C).

"The inability to perform a single, particular job does not constitute a substantial

limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(i).

Reviewing the facts in the light most favorable to Siemon, we conclude that he does not suffer from a disability as the term is used within the ADA because his disability does not prevent him from performing a class of jobs or a broad range of jobs in various classes. Siemon alleges that his impairment precludes his ability to work within a 150 employee group at AT&T's office in Denver. He does not allege that his impairment prevents him from working at other AT&T positions in Denver, much less for any other Denver employer. To the contrary, he asserts that he is qualified to perform many jobs, including sales representative, accounts receivable specialist, administrative clerk, order writer, records clerk, and word processing specialist. These are jobs he can perform anywhere, so long as he is not required to perform them within the Warner chain of command.

In Welsh v. City of Tulsa, 977 F.2d 1415, 1416-20 (10th Cir. 1992), we held that a plaintiff suing under the Rehabilitation Act, which defines "disability" in the same manner as the ADA, see 29 U.S.C. § 706(8)(B), was not substantially limited in a major life activity merely because he could not work as a firefighter. The ADA's interpretive guidelines likewise require a broader view of the type and number of jobs from which a plaintiff is limited by his impairment than that urged by Siemon. See 29 C.F.R. Pt. 1630.2(j), App. (professional baseball pitcher who develops a bad elbow and can no longer throw a baseball is not substantially

limited in the major life activity of working). Siemon's mental impairment merely prevents him from working under a few supervisors within the organizational structure of one major corporation. As demonstrated by the examples cited above, this is far too narrow to constitute a "class of jobs." See Weiler v. Household Finance Corp., 101 F.3d 519, 524-25 (7th Cir. 1996) (major life activity of working not substantially impaired if plaintiff merely cannot work under certain supervisor because of the stress and anxiety it causes).

While Siemon may be disabled from working in a small percentage of jobs at AT&T, he is not an "individual with a disability." Because it is clear that Siemon has fallen far short of alleging he is substantially limited in performing a class of jobs or a broad range of jobs in various classes, we need not determine how large or wide a group of jobs must be to constitute a "class" for purposes of the ADA. The district court correctly granted summary judgment on this claim.

**B**

Siemon next contends that AT&T improperly paid him benefits based on the sickness disability provision of the SADB Plan. By implication, he argues that AT&T wrongly denied benefits to which he is entitled under the accident disability provision of the SADB Plan. Siemon's claim is cognizable under ERISA provisions, which permit a plan beneficiary to sue "to recover benefits due him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); see also Gaylor v.

John Hancock Mut. Life Ins. Co., 1997 WL 208035, at *7 (10th Cir. Apr. 29, 1997).

AT&T responds that Siemon is not entitled to the accident disability benefits because his disability was not caused solely by a work-related accident or injury occurring on-the-job. Benefit challenges under § 1132(a)(1)(B) are "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The parties agree that the administrator of the SADB Plan has discretion to interpret and apply the plan's terms. Accordingly, we review the administrator's decision under the arbitrary and capricious standard. Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 n.1 (10th Cir. 1996). The level of deference diminishes, however, in direct relation to any conflict of interest the plan administrator has in making the challenged decision. Id. at 826-27. In this case, Siemon has made no specific allegation that the plan administrator had a conflict of interest.

We conclude that AT&T did not act arbitrarily and capriciously in applying the SADB Plan to Siemon's disability. Siemon does not allege that his disability was caused by an accident; rather, he argues that the accident disability benefits part of the plan should cover all work-related injuries. AT&T counters that, even

- 11 -

assuming the terms "accident" or "injury" are broad enough to cover Siemon's mental illness, there is substantial evidence in the record that the anxiety and depression preventing him from working under certain AT&T supervisors were not entirely work-related, and were caused by factors outside the workplace.

First, AT&T's interpretation of the SADB Plan's provisions is reasonable under our deferential standard of review.[1]  As noted in the SADB Plan's summary plan description, "[t]o qualify for payment of accident disability benefits you must . . . [b]e disabled from an injury resulting <u>solely</u> from an accident during and in direct connection with the performance of your assigned duties [at AT&T]." Appellant's App. at 75 (emphasis added).  Although Siemon notes that no other provision of the plan description requires the accident or injury to be solely work-related, he has not pointed us to any provision in the plan that conflicts with the above-quoted language.  Moreover, it is reasonable to construe the accident disability benefits, which are more generous, as having more stringent qualification requirements than the sickness disability benefits, which are granted to disabled employees for illnesses arising outside the workplace.

Second, AT&T's application of the SADB Plan to the circumstances of Siemon's disability was not arbitrary and capricious.  Siemon does not seriously

---

[1]Both parties rely on the SADB Plan's summary plan description rather than the official plan document.  Although the official plan document purports to be the authoritative description of the SADB Plan, neither party made it part of the record.

dispute that his anxiety and depression were in part due to factors that predated his relationship with Fortune, and were unrelated to his work at AT&T. Several of the psychiatrists who examined Siemon concluded that his condition was caused by a number of factors, only one of which was his work-related stress in dealing with Fortune. It was thus reasonable for AT&T to conclude that Siemon's disability was not caused "solely by an accident during and in direct connection with the performance of [his] assigned duties." The district court properly granted AT&T summary judgment on this claim.

## C

Siemon's final contention involves the Other Benefit payments that AT&T denied him. Specifically, he alleges that the Other Benefit payment scheme constitutes an employee welfare benefit plan, and that AT&T failed to follow ERISA regulations in its disclosure and administration of the plan. The district court held that the Other Benefit provisions did not constitute an employee benefit plan, and therefore was not covered by ERISA. We affirm, but for reasons somewhat different from the district court's. See Bolton, 36 F.3d at 942 ("We may affirm summary judgment 'on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result.'" (quoting Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 528 (10th Cir. 1994))).

The current incarnation of the Other Benefit payments scheme was created in 1966 by a resolution of AT&T's board of directors. The resolution vested authority in the Employees' Benefit Committee to make "Other Benefit" payments. The purpose of such payments is "to provide temporary relief in case of death of active employees and in cases of sickness, accident, death or financial emergency of retired employees, when in the judgment of the Committee, such relief is necessary to . . . alleviate serious distress." Appellant's App. at 54. The Other Benefit payments, which are paid from AT&T's general operating budget, may not exceed $1,000 and any payment exceeding $500 is subject to the approval of AT&T's president.

In implementing the 1966 resolution, the Committee has created a mechanism to apply for Other Benefit payments. In a preprinted application, an employee must make a complete financial disclosure to prove his "severe need and hardship," and demonstrate that he has attempted to reduce his financial liabilities by exhausting all other resources. The Committee reviews applications on a monthly basis, and denials may be appealed for reconsideration by the Committee. Payments have been granted "only when severe long-term financial hardship has been demonstrated." Appellant's App. at 56. From 1991 to 1996, only twenty-nine Other Benefit requests were made, thirteen of which were

granted. The record does not disclose the amount of each payment or whether the payments were made as loans.

Under ERISA, an "employee welfare benefit plan" is "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). Five elements thus make up an ERISA welfare benefit plan: (1) a "plan, fund, or program"; (2) established or maintained; (3) by an employer; (4) for the purpose of providing ERISA-type benefits; (5) to participants or their beneficiaries. Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1047 (10th Cir. 1992). AT&T stipulates that the Other Benefits payments fulfill the last four requirements, arguing only that the payments are not part of a "plan, fund, or program."

"A plan, fund, or program exists if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." Gaylor, 1997 WL 208035, at *3 (quotation omitted). Additionally, in order to fit within ERISA, the plan must implicate benefits "whose provision by nature requires an ongoing administrative program to meet the employer's obligation." Fort Halifax, 482 U.S. at 11. The district court found that "AT&T's 'Other Benefit' provision does

not implicate an ongoing administrative scheme," and thus fails the <u>Fort Halifax</u> test.  Appellant's Supp. App. at 141.

The scheme at issue in <u>Fort Halifax</u> was a one-time severance payment in event of a plant closing, a payment mandated by state statute.  The statute was challenged as preempted by ERISA, which supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  In finding that the one-time severance payment did not constitute an "employee benefit plan," the Supreme Court noted that ERISA preemption is important to shelter employers from potentially conflicting regulation of its administrative procedures.  <u>Fort Halifax</u>, 482 U.S. at 10-12.  "Congress intended preemption to afford employers the advantages of a uniform set of administrative procedures."  <u>Id.</u> at 11.  The Court concluded that the one-time severance payment constituted no more than a contingent duty that "requires no administrative scheme whatsoever to meet the employer's obligation."  <u>Id.</u> at 12.  The Court's decision was not based on finding that the severance benefit was a lump-sum payment, but rather that only a one-time event would trigger the payment.  <u>See</u> <u>id.</u> at 14 n.9 (distinguishing the one-time severance payment from death payment benefit plans, which also may require no more than a one-time payment; the ongoing, predictable nature of a death payment obligation creates a need for an administrative scheme to process claims and pay out benefits).

Moreover, no plan disclosure was necessary under ERISA reporting requirements because the state statute makes the terms of the benefit clear. Id. at 16.

The Other Benefit program at issue here differs substantially from the severance payment in Fort Halifax. Here, the Committee maintains a continuing obligation to process and consider applications for Other Benefits; applications, although few, have been made on a regular basis. The Committee must consider and judge each application by reference to the criteria of the program. See Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 257-58 (8th Cir. 1994) (noting that discretionary decisionmaking by an administrator to determine benefit eligibility implies that a plan exists). Finally, the fact that AT&T actually has in place an administrative regime to evaluate such requests is strong evidence that an ongoing scheme is necessary to process requests for Other Benefits. See Peckham, 964 F.2d at 1048 (plan found where entity maintained an ongoing program to administer benefits). If the essential elements of a plan, as described in Gaylor, exist, their implementation would require an ongoing administrative program.

Although the district court incorrectly applied the Fort Halifax test, we nevertheless conclude that the Other Benefits program is not an employee benefits plan because a "reasonable person [could not] ascertain the intended benefits." Gaylor, 1997 WL 208035, at *3 (quotation omitted). Here, the potential benefits

are too ephemeral and contingent for us to ascertain what, if anything, AT&T intends an employee to receive.  There is no statement of any entitlement by an employee to any benefit whatsoever, much less a level of benefit.  No particular event or status triggers entitlement to the benefit.  There is no separate fund with guidelines to provide clues that a benefit must be disbursed to some beneficiary.  Rather, the resolution can best be described as a "good samaritan" project with a $1,000 limit.   Even Siemon has not alleged what benefit he would qualify for under the Other Benefit program.  The language creating the Other Benefit program provides a stark contrast to the SADB Plan; in the latter, a beneficiary, if he qualifies, knows exactly the benefits to which he is entitled.   Because the level and form of benefits, if any, are not described in any material explaining or implementing the Other Benefits program, no reasonable person could ascertain what the intended benefits are: the mere right to apply for a payment that is totally discretionary is not itself a "benefit" as contemplated by ERISA.  Accordingly, AT&T is entitled to summary judgment on this claim as well.

**AFFIRMED**