F I L E D
United States Court of Appeals
Tenth Circuit

APR 21 1999

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHERYL A. JACKSON,

      Plaintiff-Appellant,

v.

UNIVERSITY OF COLORADO
HOSPITAL AUTHORITY, a political
subdivision of the State of Colorado, also
known as University Hospital,

      Defendant-Appellee.

No. 98-1049
(D.C. No. 96-M-1977)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

      Appellant Cheryl Jackson sought redress of her termination as a Pharmacy

Technician under the Americans with Disabilities Act (ADA) and further alleged breach

of contract and promissory estoppel. The district court granted a motion for summary

judgment filed by appellee, University of Colorado Hospital Authority (Hospital). The

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

court concluded Ms. Jackson failed to raise a genuine issue of material fact that she is a disabled person within the meaning of the ADA; that the Hospital failed to provide her progressive discipline as mandated by the Hospital employee handbook; or that the handbook led her to expect she would only be disciplined under its progressive procedure. Finding no error in this ruling, we affirm.

The Hospital hired Ms. Jackson in 1990 as a Pharmacy Technician. That position involved reaching for and lifting boxes of pharmaceuticals, measuring out proper doses of drugs for in-patients; standing and filling a pharmacy cart; and delivering the trays on the cart to the nurses on the different floors and departments in the Hospital. When she worked the Unit Dose Night Shift, she was on duty for ten hours, the period of time necessary to complete the task of filling a twenty-four-hour supply of in-patient medications.

In January 1994, Ms. Jackson began a six-month maternity leave. Three weeks before her scheduled return, Ms. Jackson injured her back in an automobile accident. Although she returned to work as planned on August 17, 1994, she was forced to take medical leave five days later because of severe back pain. Dr. Vostinak, her treating physician, diagnosed her with "back sprain" accompanied by signs of an earlier compression fracture at vertebrae T-9, and some degenerative disc disease at T-7 and T-8.

By October 1997, Ms. Jackson produced a medical release recognizing that her back had improved as much as she could expect and permitting her to return to work; and

if she took fifteen minute breaks every two hours and limited the weight she lifted, she could perform her job.[1]  Unfortunately for Ms. Jackson, the Hospital had a strict policy prohibiting its employees from working with medical restrictions resulting from non-job related injuries.

Because of the apparent conflict between her physical restrictions and the uncompromising policy of the Hospital, Craig Osland, Ms. Jackson's supervisor, contacted the Hospital which arranged a "fitness for duty" examination by the University Hospital Employee Health Services to evaluate Ms. Jackson's ability to perform her prior duties without restrictions.  When Dr. Epling, the examiner, found she could not, Mr. Osland wrote her and told her unless her doctor released her without work restrictions, her job would be terminated.

In January 1995, Ms. Jackson participated in a work conditioning program.  At its conclusion, her new treating doctor, Dr. Burke, acting in concert with the evaluation reached by the program, recommended she return to work subject only to the limitation that she sit for fifteen minutes every two hours and comply with the physical restrictions established by the work conditioning program.  However, on February 13, 1995, the Hospital notified her of her termination, effective February 1, stating, "according to the

---

[1]She specifically presented two medical releases, one from Dr. Vostinak who released her to work so long as she did not do certain pulling, lifting, and carrying or stand for more than eight hours without regular breaks.  Dr. Reidel, a chiropractor, released her to work two-hour shifts although he later revised that recommendation to one two-hour shift in the morning and one in the afternoon.

medical restrictions outlined in a note from your physician dated 1/26/96, you are temporarily unable to return to work from your personal injury without restrictions." After her job was terminated, Ms. Jackson underwent gallbladder surgery, which, she later stated, improved her back pain by 85%.

In filing this action under the ADA, Ms. Jackson alleged she suffered from a physical impairment which substantially limited one or more major life activities, like lifting her toddler-children, playing tennis and other sports, and various types of bending, twisting, and standing. In her deposition, taken two years after her termination, she was asked if "she came across any physical activity that you are unable to perform?" She answered, "At this point, no, that I can think of at this point." Ms. Jackson, however, filed an affidavit five months after the deposition, contradicting some of the statements she made in her deposition. For example, while she stated in her deposition she ends up "with some back pain" when she does certain chores, in her affidavit she asserted if she does not take a break from standing "the pain in my back would become unbearable, and would result in my becoming incapacitated." Her affidavit stated the gallbladder surgery alleviated "85% of the increased pain I was suffering just prior to surgery," although she previously testified she had experienced an 85% alleviation of pain. In her deposition she stated she had pain and trouble in picking up her children but "they like to be held still." In her affidavit, she said her back pain "precludes" her from lifting her children.

- 4 -

The district court, giving Ms. Jackson the benefit of the doubt in each of these factual disputes, found that none of the limitations of which she complained significantly restricted a major life activity. It noted her deposition reflected:

> there was nothing that her pain actually precluded her from doing. She said that she was able to lift her children and do her housework so long as she did not "try to do it all at one time." She also testified that she has to take a break for 15 minutes after standing for two hours. These are not substantial limitations.

The court also relied on the work capacities assessment which concluded Ms. Jackson "is not substantially limited in her standing, sitting, twisting, bending, and lifting." Further, it noted Ms. Jackson's consistent assertion throughout the litigation that at the time of her discharge, "she could have performed the functions of her job without restrictions." The district court deemed this an admission "she is not disabled under the ADA." Finally, it cited Dr. Roth's conclusion after examining Ms. Jackson that she "possesses the physical capabilities expected of a female of her age and stature." Based on this unrefuted evidence, the court held Ms. Jackson failed to show she is a person suffering from a disability under the ADA.

The court also rejected her attempt to establish a factual issue that the Hospital, nonetheless, regarded her as disabled irrefutably by not permitting her to work with restrictions. Noting "the apparent unfairness of such a policy as applied to Ms. Jackson does not constitute a legal basis for recovery under the ADA," the court reminded that throughout the litigation the Hospital focused on the particular position plaintiff held

when she was injured. That job permitted no physical limitations in its performance, and that problem alone was the basis of her discharge, it held.

The court then rejected Ms. Jackson's contention the Hospital breached its implied employment contract as set forth in the employee handbook by firing her for "excessive absenteeism" without abiding by its progressive discipline policy. First, the court found Ms. Jackson was not fired for "excessive absenteeism" but because she could not return to her position without medical restrictions. The court found the only reference to "excessive absenteeism" was in a Separation of Employment form completed a month after she was terminated.[2] Additionally, the court referred to the deposition of Patricia Chase, a supervisor, who stated "discipline" as used in "progressive discipline" implied "performance issues." She testified no one questioned Ms. Jackson's job performance but just the fact she could not work without restrictions. Based on these unrefuted submissions, the court concluded the Hospital did not breach Ms. Jackson's contract.

Given this conclusion, the court readily disposed of Ms. Jackson's promissory estoppel claim that the Hospital should have reasonably expected her to rely on the progressive discipline procedures. It found Ms. Jackson knew, having been repeatedly told she would be discharged if she returned to work with medical restrictions, that hers was not a case of employee discipline. "To claim that she expected to get a verbal

---

[2]The court noted that the record was silent on whether Ms. Jackson even saw the Separation of Employment form.

warning, followed by a written warning, and then a demotion is unreasonable in light of University Hospital's consistently repeated position regarding her continued employment," the court concluded.

Ms. Jackson now contends the district court misperceived the record and the law under the ADA. To augment the record, she relies heavily on the deposition of Ms. Lucinda Castellano, an attorney who specializes in disability law. The district court, without wonder, did not consider this deposition because the opinions of Ms. Castellano are irrelevant and inadmissible. *Specht v. Jensen*, 853 F.2d 805, 809-10 (10th Cir. 1988). We reject any notion that her deposition should be considered in this case.

Ms. Jackson contends the district court's key error was accepting the Hospital's view her disability was "temporary" and "improving," and could not substantially limit a life activity. First, she argues, the ADA specifically recognizes orthopedic impairments. 29 C.F.R. § 1630.2(h)(1). Her impairment, a compression fracture at T-9 and degenerative disc disease at T-7 and T-8, plus back sprain resulting in severe thoracic pain, is certainly not temporary, she maintains. This impairment affects not only functions like standing, sitting, twisting, bending, and lifting but everyday living like household chores, picking up her children, or engaging in recreational activities "such as bowling, tennis and weight lifting."

Alternatively, she urges at the time of her discharge she suffered from a physical impairment which substantially limited major life activities like lifting; she had reached

her maximum medical improvement; her condition would not improve; and she was fired because of that condition. Thus, focusing upon the employer's conduct at the time she was fired, not later, she maintains it is clear she was terminated because of her disability. To find as the trial court did, she foresees, would permit an employer to escape liability for terminating a disabled employee whose condition was later cured. She insists the record clearly establishes either she is disabled within the meaning of 42 U.S.C. § 12102(2) or factual disputes remain which only a jury can resolve.

The Hospital targets both the discrepancies between Ms. Jackson's affidavit and her deposition testimony. It also posits Ms. Jackson raises for the first time on appeal the argument she has a disability under the ADA because she is substantially limited in a major life activity of working. The Hospital insists Ms. Jackson introduced no evidence to show she is unable to perform a class of jobs and cannot identify a class of jobs she would be unable to perform because of her injury. Finally, the Hospital characterizes Ms. Jackson's condition as temporary in nature.

While Ms. Jackson may have a musculoskeletal impairment, her condition does not substantially limit a major life activity like "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630(I). To determine if the impairment substantially limits this major life activity, the applicable regulations offer consideration of such factors as the nature and severity of the impairment, its duration or expected duration, its permanent or long term impact, or the

expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630(j)(2)(i)-(iii). *See Sutton v. United Air Lines*, 130 F.3d 893 (10th Cir. 1997) (although plaintiffs established their uncorrected visual deficiencies were physical impairments within the ADA, they could not show their vision in its corrected state "substantially limits" their major life activity of seeing).

Under the ADA, a disability is: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see Aldrich v. Boeing Co.,* 146 F.3d 1263, 1269 (10th Cir. 1998). Ms. Jackson did not offer evidence to support any part of this definition.

In *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994), we rejected a similar claim that an employee was "perceived as disabled" because the plaintiff failed to produce evidence showing a significant restriction in his "ability to perform either a *class of jobs or a broad range of jobs in various classes* as compared to the average person having comparable training skills and abilities." *Id.* at 942 (citing 29 C.F.R. § 1630.2(j)(3)(i)) (emphasis in original). There, however, plaintiff did have evidence of the nature and severity, duration, and impact of his impairment. We do not have that evidence here. We conclude Ms. Jackson has no ADA claim.

Challenging the breach of contract and promissory estoppel claim dismissals, Ms. Jackson asserts the district court simply chose to believe one document over another, the

termination letter over the separation agreement. She cites long portions of the manual and several Colorado Court of Appeals cases for the proposition the Hospital's handbook gave her good reason to believe, although she was told she could not return to work with job restrictions, she would be subjected to progressive discipline and had an implied right to rely on those representations. These citations are inapposite.

In clear, unmistakable, and prominent terms, the handbook states: "NOTHING CONTAINED HEREIN SHOULD BE CONSIDERED A CONTRACT BETWEEN THE UNIVERSITY OF COLORADO HOSPITAL AUTHORITY AND ANY EMPLOYEE." In the part relating to "Separation of Employment" the handbook also states both the employer and the employee may terminate at will, and the relationship is "mutually beneficial."

Given both the language of the handbook and the district court's findings regarding her supervisor's deposition, Ms. Jackson cannot establish breach of contract or promissory estoppel under either the facts or the law. *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. Ct. App. 1997) ("To create an implied contractual term, statements in an employee handbook must be a manifestation of the employer's willingness to enter into a bargain with the employee. Under a promissory estoppel theory, the promise must be one that the employer should reasonably have expected the employee to consider as a commitment from an employer.") In that case, specific, prominent disclaimers in the handbook and the clear language describing progressive

disciplinary procedures as guidance for correcting job performance and not mandatory discharge steps nullified plaintiff's contention his employer intended to modify his at-will employment. The same situation exists here, and the trial court did not err in summarily dismissing these claims.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge