**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 10 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GERALD D. LUCAS,

Plaintiff-Appellant,

v.

MIAMI COUNTY, KANSAS; MIAMI
COUNTY SHERIFF'S OFFICE;
MIAMI COUNTY BOARD OF
COMMISSIONERS,

Defendants-Appellees.

No. 00-3250
(D.C. No. 99-CV-2400-KHV)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **HENRY, BRISCOE,** and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Gerald D. Lucas appeals the district court's dismissal of his complaint against the Board of County Commissioners of Miami County, Kansas (County), alleging he was terminated from his employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. On the County's motion for summary judgment, the district court held that Lucas failed to present evidence that he was "disabled" as defined under the ADA or that the County's proffered reason for his termination was a pretext for age discrimination. The court therefore granted judgment in the County's favor. Plaintiff appeals. We review the district court's grant of summary judgment de novo. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

The relevant facts of this case are set out and fully addressed by the district court in a thorough twenty-page order filed July 6, 2000. Therefore, we will repeat here only those facts necessary to our disposition. Lucas began working in the Miami County Sheriff's Office in 1992. He was promoted to a lieutenant position in 1993 and held the position of Support Services Lieutenant in 1998. Lucas primarily performed supervisory and administrative duties, but he was a general law enforcement officer, and his job description required him to be

-2-

available to respond to calls from officers in the field and to actively engage in the detention and arrest of individuals. Lucas was also responsible for supervising the county jail and was required on occasion to intervene in physical disturbances at the jail.

Lucas fractured one of his vertebra in a non-work related-injury in May 1998. His physician, Dr. Holscher, stated Lucas would be unable to return to work for several months while he recovered. The Sheriff's Office granted Lucas leave under the Family and Medical Leave Act. In July 1998, Lucas told the Sheriff's Office that his condition had not improved and that he was taking medicine for osteoporosis. Dr. Holscher gave Lucas a note in August 1998 stating he was still unable to return to work.

In September 1998, Lucas gave the Sheriff's Office a note from Dr. Holscher stating he could return to his full duties at work on September 28, 1998, but that he needed to work on the first floor in order to prevent unnecessary use of the stairs. The same day, however, the County received a note from Dr. Holscher stating Lucas still could not return to work. In an attempt to reconcile the two notes, the County contacted Dr. Holscher. The doctor reviewed Lucas' job description and sent a note to the County saying that Lucas could return to work but should avoid any physical restraint of criminals because of the high risk of additional fractures.

County officials met with Lucas and informed him that his injuries prevented him from performing his job. The County offered him a lower paying dispatcher job which could be performed on the first floor, but Lucas declined the position. The County terminated Lucas on October 5, 1998, explaining in a letter that his medical restrictions prevented him from performing the essential functions of his job. Even with a first floor office, the County explained that Lucas would be required to use the stairs because the offices of the other department officers, as well as the interview rooms, were located on the second floor of the Sheriff's Office, while office records and evidence were located in the basement. In addition, the job description of the lieutenant position held by Lucas required contact with, and restraint of, prisoners and criminals in connection with his responsibilities for overseeing the county jail and assisting law enforcement personnel in the field.

## II. ADA Claim

Lucas contends material issues of fact exist as to whether the County terminated him in violation of the ADA. The ADA prohibits employers from discriminating against individuals on the basis of disability. 42 U.S.C. § 12101. A disability is defined under the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment." 42 U.S.C. § 12102(2). Lucas concedes that he is not actually disabled under § 12102(2)(A) or (B). He claims, however, that he qualifies as a "disabled" person under the ADA because the County terminated him because it "regarded" him as being disabled under § 12102(2)(C). Lucas contends the County mistakenly believes his medical restrictions substantially limit him in the major life activity of working. According to Lucas, because the County perceives him as unable to perform any jobs within the Sheriff's Office that involve contact with criminals, it therefore perceives him as unable to perform the entire class of law enforcement jobs. Appellant's Br. at 17.

To demonstrate that the County regards him as disabled, Lucus must present evidence that the County mistakenly believes that he has a physical impairment that substantially limits one or more major life activities, or mistakenly believes that his actual nonlimiting impairment substantially limits one or more major life activities. *See Sutton v. United Air Lines, Inc*., 527 U.S. 471, 489 (1999). Equal Employment Opportunity Commission (EEOC) regulations list three factors that should be considered in determining whether an impairment substantially limits a major life activity: (1) "[t]he nature and severity of the impairment;" (2) "[t]he duration or expected duration of the impairment;" and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

-5-

We have held that "working" constitutes a "major life activity" under the ADA. *Siemon v. AT & T Corp*., 117 F.3d 1173, 1176 (10th Cir. 1997) (quotation omitted); *but see Sutton*, 527 U.S. at 492 (noting in dicta "that there may be some conceptual difficulty in defining 'major life activities' to include work"). Significantly, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *see also Sutton*, 527 U.S. at 493; *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999). To demonstrate that an impairment "substantially limits" the major life activity of working, an individual must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). EEOC regulations define a "class of jobs" as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities." *Id*. § 1630.2(j)(3)(ii)(B); *see also Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994). The EEOC regulations list three factors that "may be considered" in determining whether one is substantially limited in the major life activity of working: (1) "[t]he geographical area to which the individual has reasonable access;" (2) "[t]he job from which the individual has been disqualified because of an impairment, and

-6-

the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment;" and (3) "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." *Id*. § 1630.2(j)(3)(ii).

A plaintiff alleging he is regarded as substantially limited in the major life activity of working must present some evidence of the number and types of jobs within the geographical area to which he has reasonable access. *See Sutton*, 527 U.S. at 492-93; *Murphy*, 527 U.S. at 524; *Bolton*, 36 F.3d at 944. Lucas failed to present such evidence. As the district court explained, Lucas presented "no evidence regarding the geographical area to which he has access, or the number and type of jobs demanding similar training from which [the County] believed he was also disqualified." Appellant's Br., Ex. 1, at 15. Further, the fact that the County offered Lucas a law enforcement job in the Sheriff's Office as a dispatcher is evidence that it did not regard Lucas as precluded from the entire class of law enforcement jobs. *See Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1089 (10th Cir. 1999). Lucas' evidence simply shows that the County regards him as having a physical impairment that precludes him from jobs

requiring the use of stairs and physical contact with criminals, and thus precludes him from doing the particular job of lieutenant. Lucas did not produce evidence showing the County regards him as having a significant restriction in his "ability to perform either a class of jobs or a broad range of jobs in various classes." § 1630.2(j)(3)(i).

Lucas claims insufficient medical information supports the County's claim that he cannot perform the essential functions of his job. *See McKenzie v. Dovala*, 242 F.3d 967, 971 (10th Cir. 2001) (holding that evidence employer did not allow employee to work based on "myth, fear, or stereotype" about employee's medical impairments may be sufficient to satisfy "regarded as" component of disability definition). Here, however, the record demonstrates that the County's assessment of Lucas' ability to perform the job of lieutenant was not based on myth, fear or stereotype, but specifically on the evidence from Lucas' own physician that Lucas needed to avoid repetitive use of stairs and the physical restraint of criminals. "Where the recognition of [an ADA p]laintiff's limitations is not an erroneous perception, but is instead a recognition of fact, a finding that [p]laintiff was regarded as disabled is inappropriate." *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1241 (10th Cir. 2001). In summary, the undisputed record demonstrates that the County correctly regards Lucas as having a physical impairment that prevents him from performing a particular job, which is

insufficient as a matter of law to establish that Lucas is disabled.  Thus,  we

affirm the district court's grant of summary judgment on Lucas' ADA claim.

### III. Age Discrimination Claim

Lucas also contends material issues of fact exist as to whether the County

terminated him in violation of the ADEA.  The district court assumed, for the

sake of argument, that Lucas presented evidence establishing a prima facie case

of age discrimination under the framework articulated in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).  The County's proffered reason for

terminating Lucas was his inability to physically perform the essential functions

of his job.  Lucas must then demonstrate pretext by establishing "either that a

discriminatory reason more likely motivated the employer or . . . that the

employer's proffered explanation is unworthy of credence."  *Bullington v. United*

*Air Lines, Inc.*, 186 F.3d 1301,  1317 (10th Cir. 1999) (quotation omitted).

As evidence of pretext, Lucas claims that (1) a supervisor once referred to

him as "that crazy old man upstairs," (2) the same supervisor "made clear to two

of Lucas' subordinates that he wanted to get rid of Lucas," and (3) four other

employees were allowed to return to work after injuries.  Appellant's Br. at 12-13.

We agree with the district court that this is insufficient to meet Lucas' burden.

The "crazy old man" comment appears to be only a stray remark of little probative

value.  *See Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209-10 (10th Cir.

1999). Lucas fails to provide any record support for his assertion that this same supervisor "made it clear" he wanted to get rid of Lucas. Finally, the undisputed record demonstrates that the four other injured employees who returned to work had medical releases allowing a full return to work without restrictions, in contrast to Lucas, who returned to work with restrictions. The district court correctly concluded that Lucas failed to present evidence that the County's proffered reason for terminating him was a pretext for age discrimination.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge