Mohammed Idan ALAZAWI, Plaintiff,

v.

SWIFT TRANSPORTATION CO., INC., and M.S. Carriers, Inc., Defendants.

No. 03–2654 M1/A.

United States District Court, W.D. Tennessee, Western Division.

Dec. 28, 2004.

William T. Winchester, the Law Offices of William T. Winchester, Memphis, TN, for Plaintiff.

J. Gregory Grisham, Jeff Weintraub, Weintraub Stock & Grisham, Memphis, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCCALLA, District Judge.

Before the Court is Defendants' Motion for Summary Judgment, filed September 30, 2004. On November 9, 2004, Plaintiff was ordered to show cause within ten (10) days of entry of the November 9, 2004, order why Defendants' motion should not be granted. Plaintiff subsequently filed a response on November 30, 2004. For the following reasons, the Court GRANTS Defendants' motion.

## I. Background

Plaintiff, Mohammed Idan Alazawi (hereinafter "Plaintiff"), brings this lawsuit alleging that Defendants Swift Transportation Co., Inc., ("Swift") and M.S. Carriers, Inc., ("M.S.Carriers") (collectively "Defendants") (1) discriminated against him on the basis of his race, national origin and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* (2) violated provisions of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.;* and (3) caused him intentional economic harm under Tennessee law.

After speaking to an attorney, Plaintiff initially filed a complaint with the Tennessee Human Rights Commission ("THRC"), which he signed on March 12, 2002.[1] In that complaint, Plaintiff alleged he was discharged and denied medical leave by Defendants for excessive absenteeism. Plaintiff also checked off that he was discriminated against on the basis of his race and national origin. In the space provided, Plaintiff specified his race as Arabic

---

1. In his complaint to the THRC, Plaintiff checked off that he received assistance with respect to the complaint. He specifically said that a person named "Burkhalter" provided assistance. In his THRC complaint, Plaintiff states that Burkhalter told him to file a complaint with the THRC "and Family Medical leave act also EEOC."

and his national origin as Muslim. On May 2, 2003, the THRC reached a determination and dismissed the complaint. On May 29, 2003, the Equal Employment Opportunity Commission ("EEOC") sent Plaintiff a notice of dismissal and of his right to sue. In the above notice, the EEOC adopted the findings of the THRC. Plaintiff then filed a complaint with this Court on September 2, 2003.

The following facts are undisputed in this case: Defendant Swift is a truckload motor carrier primarily conducting its operations in the lower forty eight states and the southern provinces of Canada. On June 29, 2001, Swift acquired Defendant M.S. Carriers. M.S. Carriers continued operating as a separate entity until the companies merged on January 1, 2002. Upon the merger, the employees of M.S. Carriers became employees of Swift.

Plaintiff was initially hired by Defendant M.S. Carriers as a truck driver on May 5, 2001. M.S. Carriers terminated Plaintiff on May 16, 2001. Plaintiff was rehired by Defendants on June 27, 2001, as an over the road truck driver.

On November 11, 2001, Plaintiff was involved in an accident while driving the Defendants' truck in Montgomery, Alabama. Although the parties dispute when Plaintiff first called Defendants, it is undisputed that Plaintiff did not notify the Defendants' claims department of the accident until the day after the accident.[2] Defendants' safety department is staffed twenty-four hours per day, seven days a week.[3] Defendants maintained a policy whereby a driver's failure to report an accident, regardless of its severity, could result in immediate termination. On November 21, 2001, Defendants terminated Plaintiff's employment for failing to report the November 11, 2001, accident in violation of company policy.[4] At the time of his termination, Plaintiff had not been employed by Defendants for twelve months.

Plaintiff alleges that the Defendants discriminated against him by terminating his employment for no legitimate purpose. Plaintiff also alleges Defendants discriminated against him by not giving him as many miles to work as other non-Arabic drivers; compensating him a total of $150 for a period of seven days when his truck was broken down while paying non-Arabic truck drivers $100 per day when they encountered the same situation; acting hateful, as fellow employees made mean comments to him; taking sometimes two days to provide Plaintiff with goods for shipment;[5] providing bad references; and giving different reasons over a four month period as to why Plaintiff was fired.[6]

2. It appears from Plaintiff's deposition that Plaintiff testified that he called Defendants on the night of the accident and left a message.

3. It appears to the Court that Defendants are using the terms "safety department" and "claims department" interchangeably. In its statement of undisputed facts, Defendants state that "Defendant's safety department is staffed twenty-four hours (24) per day, seven (7) days a week." (Def.'s Mem. Supp. of Mot. for Summ. J., p. 3). In support of this fact, Defendants cited page 153 of Plaintiff's deposition. On page 153 of Plaintiff's deposition testimony, however, Defendants asked Plaintiff whether he was "aware that the Swift claims department is staffed seven days a week, twenty-four hours a day?" (Pl.'s Dep. 153:8–10). Plaintiff testified in his deposition that he was aware that Defendants' claims department was staffed in the above manner.

4. The Separation Notice Plaintiff received stated that Plaintiff was being terminated for violating company policy.

5. Plaintiff specifically alleged in his complaint to the THRC that it "would take some times 2 days sitting to get a load."

6. Plaintiff also stated in his THRC complaint that: "Other drivers told me they did me wrong."

Plaintiff also alleges that he was terminated for exercising rights provided by the FMLA. Specifically, Plaintiff claims that in November of 2001, he gave his supervisor at least one week's notice that he had a necessary doctor's appointment. Plaintiff's doctor's appointment was on November 26, 2001. Plaintiff further alleges that when he called the supervisor two days before the appointment, as instructed, the supervisor denied his request for time off.[7]

With respect to Plaintiff's discrimination claim, Plaintiff admitted in his deposition that he knew of no other non-Arabic, non-Iraqi, or non-Muslim over the road truck driver employed by Defendants who was not terminated for engaging in the same conduct that led to Plaintiff's termination. Plaintiff could not name any of the drivers that received more miles than himself and admitted in his deposition that some of the drivers who allegedly received more miles had been employed with Defendants for five to ten years.[8]

Although some drivers made mean comments to Plaintiff, in his deposition, Plaintiff could not name any specific driver who made the comments. Plaintiff also testified in his deposition that neither the management nor any supervisor made the comments. Plaintiff further testified that he did not report any hateful conduct to the Defendants.

Plaintiff also testified in his deposition that it would sometimes take two days to get goods for shipment while he was in Laredo, Texas. There is no evidence in the record, however, showing whether other non-Arabic, non-Iraqi or non-Muslim drivers faced the same situation as Plaintiff.

Moreover, although Plaintiff alleged he was receiving bad references from the Defendants, he stated in his deposition that he only felt that Defendants were giving him bad references.[9] Plaintiff also stated in his deposition that he only felt that some of Defendants' employees gave him different reasons as to why he was fired. In his deposition, Plaintiff testified that when he asked an Employee Relations Manager why he was fired, the manager responded that he did not know.[10] In addition, when Plaintiff asked his supervi-

---

**7.** In his deposition, however, Plaintiff testified that when he initially called his supervisor, he did not tell her the date of his doctor's appointment. The supervisor instructed Plaintiff to call her two days before the appointment. Plaintiff further testified in his deposition that pursuant to these instructions he called his supervisor on November 18. Plaintiff testified that he did not have a doctor's appointment on November 20.

**8.** Plaintiff also testified in his deposition that the drivers informed him that the procedure as to how Defendants gave miles to drivers when they started differed from the current manner in which Defendants gave miles to Plaintiff.

**9.** Plaintiff testified in his deposition that he asked his supervisor whether he had bad references. According to Plaintiff's deposition testimony, his supervisor stated that she did not know.

**10.** Plaintiff's deposition testimony was as follows:

Q. Then it says, right after that, "For last 4 months giving different reasons why I was fired." What does that mean?
A. I called M.S. Carriers, you know, I call them, one of them, you know, like when I speak to Mike—Mike, whatever his name.
Q. Crum?
A. Yes, sir. You know, he told me something, then the paper say something else, you know.
Q. Now, Mr. Crum also told you he didn't really know.
A. He didn't what?
Q. He didn't really know.
A. He said, I don't know for sure, you know, this one or that one.
(Pl.'s Dep., 260:18–24, 261:1–9).

sor why he was fired and what happened, the supervisor responded that she did not know.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

Defendants move for summary judgment as to Plaintiff's claims brought under Title VII, the FMLA and Tennessee state law. The Court will consider Defendants' contentions in turn.

### A. Title VII

Defendants assert four arguments in support of their motion for summary judgment as to Plaintiff's Title VII claim. First, Defendants contend that Plaintiff failed to exhaust administrative remedies. Defendants next contend Plaintiff failed to establish a prima facie case of race and/or national origin discrimination. Next, Defendants argue that Plaintiff failed to establish a prima facie case of religious discrimination. Finally, Defendants contend that even if Plaintiff has established a prima facie case of race, national origin, and/or religious discrimination, Plaintiff has nevertheless failed to show that the Defendants legitimate non-discriminatory reason was not a pretext for intentional discrimination.

### 1. Failure to Exhaust Administrative Remedies

Defendants contend that Plaintiff failed to exhaust his administrative remedies under Title VII because he failed to allege religious discrimination in his complaint to the THRC or EEOC. Defendants specifically argue that because Plaintiff failed to allege religious discrimination in his complaint before the THRC, his religious discrimination claim was not before the EEOC for review when it adopted the THRC's findings.

A federal court cannot have subject matter jurisdiction over a Title VII claim unless the claimant first unsuccessfully seeks administrative relief. *Ang v. Procter and Gamble Co.*, 932 F.2d 540, 545 (6th Cir.1991). "Courts have thus held that if the claimant did not first present a claim to the ... (EEOC), that claim may not be brought before the court." *Id.* "The judicial complaint must be limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of dis-

crimination.'" *Id.* (quoting *EEOC v. Bailey Co.,* 563 F.2d 439, 446 (6th Cir.1977), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978)). Under this rule, the Sixth Circuit has noted that "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria,* 157 F.3d 460, 463 (6th Cir. 1998). Many courts broadly construe the charged claim "because most Title VII claimants are unschooled in the technicalities of the law and proceed without counsel."[11] *Ang,* 932 F.2d at 546.

■ In the case at bar, Plaintiff, in his complaint to the THRC, checked off that he was discriminated against on the basis of his race and national origin. In that complaint, however, Plaintiff specified his race as Arabic and his national origin as Muslim. Therefore, a claim of religious discrimination could have reasonably expected to grow out of Plaintiff's charge of discrimination to the THRC. Because the EEOC adopted the THRC's findings, the Court finds that Plaintiff properly exhausted his administrative remedies with respect to the claim for religious discrimination under Title VII.

### 2. Race, National Origin and Religious Discrimination

Title VII prohibits discrimination against employees on the basis of race, national origin and religion with regard to hiring, firing, or other terms and conditions of employment. In the absence of direct evidence of discrimination, Title VII

claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this approach, a plaintiff must first establish a prima facie case of discrimination. *Burdine,* 450 U.S. at 252, 101 S.Ct. 1089. To establish a prima facie case of race, national origin or religious discrimination, a plaintiff must show: "(1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) for the same or similar conduct, he was treated differently from similarly situated non-minority employees." *See Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000) (quoting *Perkins v. University of Michigan,* 934 F.Supp. 857, 861 (E.D.Mich.1996)).

Establishing a prima facie case creates a rebuttable presumption that the employer engaged in unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If a plaintiff meets this burden, the burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 252–53, 101 S.Ct. 1089. If the employer meets this burden, the burden then shifts back to the plaintiff to show that the reasons offered by the defendant are a pretext for discrimination. *Id.* at 253, 101 S.Ct. 1089.

■ To prove pretext, a plaintiff may show either: (1) that the employer's reasons had no basis in fact; (2) that the

---

**11.** Although Plaintiff was told by an attorney to file a complaint with the THRC, there is no evidence in the record indicating that Plaintiff was assisted by counsel in preparing that complaint. Moreover, Defendants do not contend that Plaintiff was assisted by an attorney in preparing the complaint to the THRC. Therefore, the Court notes that this case does not implicate the Sixth Circuit's statement in *Ang* that "[l]iberal construction is not necessary where the claimant is aided by counsel in preparing his charge." *Ang,* 932 F.2d at 546.

employer's proffered reason did not actually motivate the decision; or (3) that the employer's reasons were insufficient to motivate the decision. *Manzer v. Diamond Shamrock*, 29 F.3d 1078, 1084 (6th Cir.1994).

■ Throughout this analysis, the ultimate burden of proving the intent to discriminate, by a preponderance of the evidence, always remains with the plaintiff. *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742.

■ Defendants contend that Plaintiff is unable to establish a prima facie case of race, national origin and/or religious discrimination. Defendants specifically contend that Plaintiff cannot produce evidence that establishes that he was treated differently from similarly situated employees outside of his protected class. The Sixth Circuit has noted that "[i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects.*" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992) (emphasis in original). Moreover, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather ... the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (emphasis in original) (citation omitted). In examining whether Plaintiff was treated differently than similarly situated employees outside of his protected class, "courts should not demand exact correlation, but should instead seek relevant similarity." *Perry*, 209 F.3d at 601.

■ In the case at bar, Plaintiff conceded in his deposition that he knew of no other non-Arabic, non-Iraqi or non-Muslim over the road truck driver employed by Defendants who was not terminated for engaging in the same conduct that led to Plaintiff's termination. Plaintiff also could not name any driver who received more miles than himself and admitted in his deposition that some of the drivers who allegedly received more miles had worked with the company for five to ten years. Finally, there is no evidence in the record showing that Plaintiff was treated less favorably than other non-Arabic, non-Iraqi or non-Muslim employees with respect to the amount of time it took for Plaintiff to get goods for shipment. Therefore, Plaintiff's claims that Defendants discriminated against him by terminating him for no legitimate purpose, not providing him as many miles to work as others outside his protected class and taking sometimes up to two days to provide him with goods for shipment must fail because Plaintiff cannot show that he was treated differently from other similarly situated employees.

Plaintiff has failed to produce any evidence to substantiate his other claims of discrimination. There is no evidence in the record supporting Plaintiff's allegation that other drivers were compensated more when their trucks broke down. Moreover, Plaintiff conceded in his deposition that he only felt that Defendants were giving him bad references and did not produce any evidence to support this allegation. Plaintiff also stated in his deposition that he only felt that some of Defendants' employees gave him different reasons as to why he was fired and that when he asked two employees why he was terminated and what happened, both employees responded that they did not know.

■ Although it does not appear to the Court that Plaintiff is alleging a harass-

ment claim against Defendants, the Court finds that Plaintiff has not produced evidence to support his claim that Defendants engaged in hateful conduct towards him. Although Plaintiff alleges some drivers made mean comments to him, Plaintiff, in his deposition, could not name any specific driver who made the comments, stated that neither management nor any supervisor made the comments and admitted that he did not report any hateful conduct to the Defendants.

■ Accordingly, the Court finds that Plaintiff has not produced evidence to establish a prima facie case of discrimination on the basis of race, national origin and religion. Even assuming, however, that Plaintiff was able to satisfy his burden of establishing a prima facie case, Plaintiff has not produced evidence to show that Defendants' articulated legitimate non-discriminatory reason for terminating Plaintiff was a pretext for intentional discrimination. Defendants' terminated Plaintiff for failing to report the November 11, 2001, accident in violation of company policy. Plaintiff points to no evidence in the record to show that Defendants' reason for terminating Plaintiff had no basis in fact, did not actually motivate the decision to terminate Plaintiff, or that the reason was insufficient to motivate the decision. *Manzer*, 29 F.3d at 1084. The Court therefore GRANTS Defendants' Motion for Summary Judgment as to the claims for race, national origin and religious discrimination.

**B. FMLA**

■ Plaintiff alleges that he was terminated from his employment for exercising his rights under the FMLA. Defendant argues that Plaintiff is unable to assert a claim under the FMLA because Plaintiff was not employed by Defendants for a period of one year prior to his November 21, 2001, termination. Under certain circumstances, the FMLA entitles eligible employees to twelve weeks of unpaid leave during any twelve month period. 29 U.S.C. § 2612(a)(1). In order to be an "eligible employee," an employee must have been employed "for at least 12 months by the employer with respect to whom leave is requested … and … for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2)(A). The FMLA's eligibility requirements, however, are to be calculated from the date the leave commences, not the date of the employer's adverse action against the employee. *See Butler v. Owens–Brockway Plastic Products, Inc.*, 199 F.3d 314, 316 (6th Cir.1999).

In the case at bar, Plaintiff was initially employed by Defendants on May 5, 2001. After being terminated on May 16, 2001, Plaintiff was rehired by Defendants on June 27, 2001. Plaintiff sought medical leave sometime during November of 2001 for a doctor's appointment on November, 26. Plaintiff was terminated from his employment on November 21, 2001. Under these facts, the Court finds that the Plaintiff was not an "eligible employee" under the FMLA because he was not employed by Defendants for at least twelve months at the time his leave commenced. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's FMLA claim.

**C. Intentional Economic Harm**

■ Plaintiff alleges that Defendants committed intentional economic harm by terminating Plaintiff from his employment. Tennessee law, however, does not provide a cause of action for intentional economic harm arising from an employer's decision to terminate an employee. Accordingly, Defendants' Motion for Summary Judg-

ment is GRANTED as to Plaintiff's claim of intentional economic harm.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment.